1  Oleg Elkhunovich (269238)
   SUSMAN GODFREY L.L.P.
2  1901 Avenue of the Stars, Suite 950
   Los Angeles, California 90067-6029
3  Telephone: (310) 789-3100
   Facsimile: (310) 789-3150
4  oelkhunovich@susmangodfrey.com

5  William Christopher Carmody (*pro hac vice* to be filed)
   SUSMAN GODFREY L.L.P.
6  1301 Avenue of the Americas, 32nd Floor
   New York, NY 10019-6023
7  Telephone: (212) 336-8330
   Facsimile: (212) 336-8340
8  bcarmody@susmangodfrey.com

9  Attorneys for Plaintiff PETER GATIEN

10

   **UNITED STATES DISTRICT COURT**
11
   **CENTRAL DISTRICT OF CALIFORNIA**
12
   **WESTERN DIVISION**
13

14  PETER GATIEN,                                    Case No. 2:16-cv-06547-

15           Plaintiff,

16  vs.                                              COMPLAINT FOR LANHAM ACT
                                                     VIOLATIONS, TRADEMARK
17                                                   INFRINGEMENT, AND UNFAIR
                                                     COMPETITION
18  RMNJ LICENSING LLC; TAO GROUP LLC;
    DREAM GROUP, LLC; RICHARD
19  WOLF, MARC PACKER, NOAH                          JURY TRIAL DEMANDED
    TEPPERBERG, JASON STRAUSS,
20
             Defendants.
21

22

23

24

25

26

27

28

## INTRODUCTION

Plaintiff Peter Gatien brings this action to stop Defendants' illegitimate use of the marks "The Limelight" and "Limelight" for Defendants' new club venture at the Dream Hollywood hotel as part of a transparent attempt to build a new business based on misappropriation of Gatien's Limelight brand recognition and deception of consumers.

The Limelight marks are not Defendants' to use.  For the last 40 years, Peter Gatien owns all legal rights to the Limelight marks in connection with the club business since he began using them in 1976 when he opened the first Limelight nightclub in Hallandale, Florida.  Since that time, the Limelight marks have been closely associated with Mr. Gatien and his club businesses.  Throughout the 1970s, 1980s, 1990s, and 2000s, the Limelight brand grew and clubs were opened in Atlanta, Chicago, New York, and London.  Most notably, the Limelight club in New York City, opened by Mr. Gatien in 1983, became a world-famous venue, earning Peter Gatien notoriety as the "King of nightlife."

The Limelight brand had established extremely valuable goodwill, which Peter Gatien continues to exploit.  Rather than establish a brand and reputation of their own, Defendants are attempting to misappropriate the goodwill of the Limelight recognized brand and compete in a manner calculated to deceive consumers and irreparably harm Mr. Gatien.

Defendants' improper misappropriation of the Limelight brand is knowing and in bad faith.  Defendants are well-aware of the notoriety of Limelight brand and its inextricable connection to Mr. Gatien—not solely from the general industry knowledge, but also from personal and business relationships with Mr. Gatien and his family.   Individual defendants Jason Strauss and Noah Tepperberg track their beginnings in the industry to their party promotion work at Mr. Gatien's clubs in the early 1990s, made possible through Mr. Strauss's acquaintance with Mr. Gatien's daughter Amanda.  Mr. Strauss has remained a family friend since then,

1

giving him intimate knowledge of Mr. Gatien's continued use of the Limelight marks. For example, in approximately mid-2000s, Defendant Jason Strauss approached Mr. Gatien about licensing rights to the Limelight marks for a new venture. And although those discussions never materialized, he and his colleagues were specifically aware of Mr. Gatien's continued association with and use of the marks then. Further, Mr. Strauss helped Mr. Gatien's daughter Jen by making an introduction to a clothing brand to license the Limelight marks and logo. In 2011, Mr. Tepperberg attended the premier of the *Limelight* film in New York and offered to host a premiere party at Defendants' Avenue New York club. Mr. Strauss hosted a party to celebrate and promote the release of the documentary at Defendants' club Marquee in Las Vegas. In sum, Defendants were aware of Mr. Gatien's continued use of the Limelight marks. Mr. Strauss told his friend Amanda Gatien that Defendants would use Mr. Gatien's Limelight marks in their new venture in Los Angeles, but when asked by Mr. Gatien to change the name, Defendants refused.

Peter Gatien continues to use the Limelight name and benefit from the brand's goodwill. The Limelight brand is inextricably intertwined with Mr. Gatien and his club business. Defendants' improper use of the Limelight marks threatens to misappropriate that goodwill and threatens to confuse, deceive, and mislead consumers. These harms are irreparable and will continue unless and until Defendants' conduct is enjoined by this Court.

## THE PARTIES

1. Plaintiff Peter Gatien ("Gatien") is an individual residing in Toronto, Ontario, Canada.

2. Gatien is informed and believes, and on that basis alleges, that Defendant RMNJ Licensing LLC ("RMNJ") is a limited liability company organized under the laws of Delaware and located at 888 Seventh Avenue, Suite 3402, New York, New York 10106.

3.     Gatien is informed and believes, and on that basis alleges, that Defendant Tao Group LLC ("Tao") is a limited liability company organized under the laws of Delaware and located at 888 Seventh Avenue, Suite 3402, New York, New York 10106.

4.     Gatien is informed and believes, and on that basis alleges, that Defendant Dream Hotel Group, LLC ("Dream") is a limited liability company organized under the laws of New York and located at 200 West 55th Street, Suite 42, New York, NY 10019.  Dream develops, operates, and manages a number of luxury hotels worldwide, including the forthcoming Dream Hollywood hotel.

5.     Gatien is informed and believes, and on that basis alleges, that Defendant Richard Wolf ("Wolf") is an individual residing in New York, New York.  Wolf is a partner at RMNJ and Tao.

6.     Gatien is informed and believes, and on that basis alleges, that Defendant Marc Packer ("Packer") is an individual residing in New York, New York.  Packer is a partner at RMNJ and Tao.

7.     Gatien is informed and believes, and on that basis alleges, that Defendant Noah Tepperberg ("Tepperberg") is an individual residing in New York, New York.  Tepperberg is a partner at RMNJ and Tao.

8.     Gatien is informed and believes, and on that basis alleges, that Defendant Jason Strauss ("Strauss") is an individual residing in Las Vegas, Nevada.  Strauss is a partner at RMNJ and Tao.

9.     Defendants RMNJ, Tao, Wolf, Packer, Tepperberg, and Strauss are referred to collectively as the "Tao Defendants."

10.     Gatien is informed and believes, and on that basis alleges, that the Tao Defendants operate a number of nightclubs and restaurants in New York, Las Vegas, and Sydney, including restaurants and clubs at Dream Hotels, and specifically including the forthcoming Limelight club at the Dream Hollywood hotel.

COMPLAINT FOR LANHAM ACT VIOLATIONS, TRADEMARK INFRINGEMENT, AND UNFAIR COMPETITION
4483335v1/015318

## JURISDICTION AND VENUE

11. This action arises under the federal Lanham Act, 15 U.S.C. § 1051 et seq., and California statutory and common law. This Court has subject matter jurisdiction over the federal law claims under 28 U.S.C. §§ 1331, 28 U.S.C. § 1338, and 15 U.S.C. § 1121. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. This Court also has diversity jurisdiction over all claims under 28 U.S.C. § 1332.

12. This Court has personal jurisdiction over Defendants because Defendants do business here and have committed acts and violations that cause injury in this judicial district.

13. Venue is proper in this federal district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## FACTS COMMON TO ALL COUNTS

### I. Gatien's Limelight Nightclubs

14. Gatien opened his first Limelight nightclub in Hallandale, Florida in 1976:



Since that time, the marks "Limelight" and "The Limelight" (together, the "Limelight marks") have been closely associated with Gatien and his business.

15. Throughout the 1970s, 1980s, 1990s, and early 2000s, the Limelight brand grew and clubs were opened across the United States and internationally.

16.     In 1979, Gatien opened the Limelight in Atlanta, which quickly became popular among celebrities:



17.     In 1985, Gatien opened the Limelight in Chicago, which immediately became a premier nightclub there, and in the same year, Gatien opened the Limelight in London:



18.     Most notably, the Limelight club in New York City opened in 1983. World-famous artist Andy Warhol hosted the Limelight's opening party there.  The Limelight in New York became a great and lasting success, turning into an iconic symbol of New York nightlife, known worldwide.  As *Interview Magazine* noted "[a] high-concept disco with staying power was all but unheard of before Peter Gatien got in the game."[1]  The Limelight success earned Gatien a reputation as the undisputed "King" of the New York City club scene—the title used in reference to Gatien in such publications as Forbes Magazine,[2] New York Magazine,[3] The Financial Post Magazine,[4] and many others over the years.

---

[1] Steven Garbarino, *Peter's Congregatien*, Interview Magazine (Mar. 1993).
[2] Pablo Galarza, *King of the Night*, Forbes Magazine (Sept. 27, 1993).
[3] Chris Smith, *Mr. USA:  With the Opening of His Club USA, Peter Gatien Is the King of the Night*, New York Magazine (Jan. 18, 1993).
[4] Suzanna Andrews, *In the Limelight with Citizen Pete*, The Financial Post Magazine (Dec. 1992).

COMPLAINT FOR LANHAM ACT VIOLATIONS, TRADEMARK INFRINGEMENT, AND UNFAIR COMPETITION
4483335v1/015318

19.     The Limelight's notoriety is enshrined in popular culture.     For example, the Limelight in New York was the subject of the 1985 song *The Disco (Used to be a Cute Cathedral)* by singer Steve Taylor.   The song's lyrics mention the club's name and history.   Gatien was also referenced in the Fun Lovin Criminals' song and Jay-Z's song *Foundation* as running the New York night scene.  Limelight's New York location was mentioned and depictured in the second season premiere of *Miami Vice*, the television series *Carrie Diaries* and *Sex in the City*, and film *Bad Lieutenant.*

20.     The Limelight in New York also became home to performances by superstar musicians and bands like Prince, Whitney Houston, Pearl Jam, Guns N' Roses, Smashing Pumpkins, and Nine Inch Nails.  The first techno music heard in New York was at the Limelight where Gatien invited DJs from England such as Paul Oakenfold and Carl Cox.  Other world-famous DJs to perform at the Limelight were Moby and Tiesto.    The weekly Sunday "Rock n Roll Church" nights drew performances Ozzy Osbourne, Motley Crew, Red Hot Chili Peppers, Billy Idol, The Ramones, and many others.

21.     Gatien and the histories of his clubs, including the Limelight, were discussed at length in the book *The Last Party:  Studio 54, Disco, and the Culture of the Night* by Anthony Haden-Guest.  In 2011, a documentary titled *Limelight*, directed by Billy Corben, premiered at the Tribeca Film Festival, chronicling the history of the Limelight and Gatien.   The film was distributed nationally by Magnolia Pictures and also sold internationally.

**II. Gatien's Registered Limelight Trademark**

22.     In 1983, Gatien—through his corporation—filed for registration of the "Limelight" trademark with the United States Patent and Trademark Office ("USPTO") in the categories of Discotheque Services and Café and Restaurant Services, with the first commercial use of 1976.

23.     The Limelight trademark was registered on July 9, 1991, Reg. No. 1,650,369:



**United States Patent and Trademark Office**     Reg. No. 1,650,369
                                                   Registered July 9, 1991

**SERVICE MARK**
**PRINCIPAL REGISTER**

GATIEN ENTERPRISES, INC. (GEORGIA COR-
PORATION)
C/O KILPATRICK & CODY, SUITE 1750
100 GALLERIA PARKWAY, N.W.
ATLANTA, GA 30339 , ASSIGNEE OF LANS-
DOWN INVESTORS OF N.Y., INC. (NEW
YORK CORPORATION) NEW YORK, NY
10176

FOR: DISCOTHEQUE SERVICES, IN CLASS
41 (U.S. CL. 107).

FIRST USE 0–0–1976; IN COMMERCE
0–0–1976.
FOR: CAFE AND RESTAURANT SERVICES,
IN CLASS 42 (U.S. CL. 100).
FIRST USE 0–0–1976; IN COMMERCE
0–0–1976.

SER. NO. 73–412,355, FILED 2–4–1983.

CRAIG D. TAYLOR, EXAMINING ATTORNEY

24.     The Limelight trademark was renewed in 2001.  Due to administrative oversight, a declaration of commercial use was not filed and the mark was not renewed again in 2011, leading to its removal from the registry on December 1, 2015.  However, Gatien has always intended to use and did continue using the Limelight marks.

### III.   Gatien Continues Commercial Use Of The Limelight Marks To The Present

25.   Although the Limelight club in New York stopped operating under that name in 2001, Gatien continued exploiting the Limelight marks and the goodwill associated with them in commerce.

26.   Specifically, Gatien pursued a number of various plans to launch another Limelight club over the years.  For example, Gatien explored possibilities of opening another Limelight club in Moscow, Russia in 2012, in Las Vegas, Nevada in 2013, and in Toronto, Canada in 2014.

27.   Gatien is currently in the process of organizing a Limelight Halloween Party in New York City.

28.   Gatien is currently in discussions about reincarnation of the Limelight in New York City.

29.   Additionally, since 2012 to the present, Gatien, with his daughter Jen, has been marketing and selling nationally apparel bearing the Limelight marks:



30.   As illustrated above, Gatiens' apparel is designed to promote the Limelight brand's reputation and goodwill in connection with the nightclub business as the apparel feature logos used to brand and promote Gatien's Limelight nightclubs.

8

31.     Moreover, the Limelight marks have been used to promote the Limelight's brand and reputation in the movie business.  As discussed above, the *Limelight* documentary—produced by Gatien's daughter Jen—was released in 2011, and focuses on the history of the Limelight clubs and Gatien:



32.     Gatien, with his daughter Jen, is currently in the process of developing a full-featured film *Limelight*—a biopic about Gatien building the Limelight empire.

33.     Gatien, with his daughter Jen, owns the following domain names, purchased with the intent to promote the Limelight marks:

- LimelightClubs.com;
- LimelightNY.com;
- TheLimelight.co;
- LimelightTheMovie.com.

34.    Gatien, with his daughter Jen, also owns "The Official Limelight FB" Facebook page, designed and maintained with the intent to promote the Limelight marks:



**IV.    Defendants' Bad-Faith Misappropriation of the Limelight Marks**

35.    Defendants specifically knew of Gatien's strong connection to the Limelight marks and intended to misappropriate them.

36.    The Tao Defendants and Gatien have known each other for many years.

37.   Defendant Strauss was introduced to the Gatien family when he met Gatien's daughter Amanda in March 1993 on a Spring Break trip while in high school.  Strauss attended a senior prom with Amanda, as well as participated in numerous other milestone intimate family events, including her high school graduation and her 21st birthday party.  Strauss and Amanda Gatien have been friends for over 23 years.

38.   Defendants Strauss and Tepperberg track their beginnings in the club industry to their party promotion work at Gatien's club in the early 1990s, made possible through Strauss's acquaintance with Gatien's daughter Amanda, as described by Strauss to GQ Magazine:

"Peter's daughter heard that I did these parties uptown at the Surf Club," Jason said.  "That was where all the Waspy preppy-type high school kids went when they graduated college.  Very synonymous with the Dorrian's crowd.  So she went once and told [her father] about us. When this happened, it was the pinnacle of his career.  He had all four megaclubs going at full blast in Manhattan.  Limelight. Palladium.  Tunnel.  Club USA.  All of them packed every night of the week.   Doing numbers like the world's never seen.   Four megaclubs of that level.  She convinced him on a Thursday to give us the upstairs room, which was overlooking the Thierry Mugler room."[5]

39.   In approximately mid-2000s, Defendant Strauss approached Gatien about licensing rights to the Limelight marks for a new venture.  Gatien invited him to make a proposal, but one did not materialize.

40.   The Tao Defendants also assisted Gatien's daughter Jen in promoting the Limelight documentary, which she produced, in 2011.  Defendant Tepperberg attended the premiere of the film on April 22, 2011.  Defendant Strauss helped

---

[5] David Friedman, *The Best Night $500,000 Can Buy*, GQ Magazine (Aug. 28, 2012),   *available   at*   http://www.gq.com/story/marquee-las-vegas-nightlife-gq-september-2012 (last visited Aug. 24, 2016).

COMPLAINT FOR LANHAM ACT VIOLATIONS, TRADEMARK INFRINGEMENT, AND UNFAIR COMPETITION
4483335v1/015318

organize a party for the film at the Tao Defendants' Marquee nightclub in Las Vegas on February 13, 2012.  Tepperberg and Strauss offered to host a premiere party for Limelight in New York.  Strauss also introduced Gatien's daughter Jen to a possible partner for Gatien's Limelight-branded t-shirts business.

41.   Yet, unbeknownst to Gatien, the Tao Defendants chose to illegitimately use the Limelight marks they well knew belonged to Gatien in connection with their nightclub business, and specifically, plans to open the Limelight club in the new Dream Hollywood hotel in Los Angeles.

42.   On August 17, 2015, Defendant RMNJ filed an application with the USPTO to register trademarks they knew were owned by Gatien—"Limelight" and "The Limelight."   RMNJ represented to the USPTO that it intended to use the marks in commerce in connection with the nightclub and day club services.

43.   On November 28, 2015, the USPTO rejected the RMNJ's application because of a likelihood of confusion with Gatien's registered mark, which was still active at the time.

44.   As discussed above, two days later, on December 1, 2015, Gatien's mark was cancelled and RMNJ represented to the USPTO—despite its knowledge of Gatien's ownership and continued use of the Limelight marks—that the refusal should be withdrawn.

45.   The USPTO issued notices of allowance on May 31, 2016 for RMNJ's registration of "The Limelight" and "Limelight" marks, but they have not been registered to date.

46.   On July 2, 2016, unbeknownst to Gatien, Defendant Packer, on behalf of the Tao Defendants, registered at least two domain names using the Limelight marks:  LimelightHollywood.com and LimelightLasVegas.com.

47.   On July 13, 2016, Defendant Strauss sent a message to Amanda Gatien, telling her that he had "a funny story" for her.  Shortly thereafter, Strauss revealed to Amanda Gatien that the Tao Defendants intended to use Gatien's

1   Limelight marks to open the Limelight club in the new Dream Hollywood hotel in
2   Los Angeles.

3         48.    Amanda Gatien was shocked by Strauss's revelation and arranged for
4   a phone conversation between Gatien and Strauss.

5         49.    During the phone discussion on July 21, 2016, Gatien made clear to
6   Strauss that he owned the Limelight marks and asked that the Tao Defendants not
7   use them in connection with their business.   Strauss told Gatien that he would
8   discuss the issue with his partners, and Gatien requested a response by July 25.

9         50.    On July 21, 2016, Strauss sent an email to Gatien confirming the
10   discussion they had by phone and informing Gatien of the delay in his ability to
11   discuss the Limelight marks issue with his partners due to scheduling issues:

12
13   > Hey Peter, glad we got to talk today. Might need till mid  next week to get  back
> to you. Our La delepoment partner in on vacation  in in Asia +  Noah and my
> other partner Marc Packer  are leaving Friday for euro vaca , I leave for
14   > Mykonos tomorrow . Tough to get everyone on a phone.

15         51.    On July 22, 2016, Gatien sent an email to Strauss, confirming their
16   discussion by telephone, summarized as follows:

17   **Subject:** Limelight Brand

18   Jason,

19   Thank you for your call, though we both agreed yesterday that the conversation
20   should have taken place  a year ago. I have clearly expressed to you how I feel.
The Limelight brand belongs to me and my family, I have had this brand since
21   1975, a year after you were born. You have your own brands and understand
how difficult it is to develop and nurture those brands.

22
23   I spoke with Ben Brafman this morning and he instructed me to inform you that
Wednesday is acceptable rather than Monday but there has to be resolution no
later than Wednesday.

24
25   The last thing anyone wants is to go to battle over my Limelight brand.  Trust me
from someone who has been around, it is not worth the heartache, being
26   brought into court and the judicial system is debilitating to say the least. The ill
will that is being created along with negative perceptions and future publicity
27   will only attach negativity to everyone involved.

28

> On a personal note Jason, I know in your heart that you know your group using Limelight against my will is totally disrespectful, unjustifiable and hurtful to myself and my family, with whom you have had personal relationships with for decades. It is not that difficult for a creative group like yours to come up with another name that will not leave a wake of ill feelings and harm towards myself and all of my family. Certainly your group who has great creative talent can come up with a new brand that compliments your new LA project.
>
> I have always known both you and Noah to be decent and respectful men and I only wish to resolve this issue amicably and move forward.
>
> Sincerely,
>
> Peter

52.     On the same day, July 22, 2016, Strauss responded to Gatien as follows:

> Message received. For the record there was no intentional disrespect intended here. Ill push my partners to get a response .

53.     When Strauss finally responded to Gatien, he simply referred Gatien to talk to the Tao Defendants' lawyer:

> I'm over sea but regarding our last talk my partners feel we just have the lawyers talk. You can have your lawyer contact David Jaroslawicz they know each other.

54.     Later discussions among counsel confirmed that Defendants intended to proceed with their illegitimate use of Gatien's Limelight marks for their new venture at the Dream Hollywood hotel.

55.     Defendant Dream also knew about Gatien's ownership of the Limelight marks. In fact, Dream's co-founder Vikram Chatwal recently opened a new upscale restaurant Jue Lan Club at the Limelight New York's original location, also attempting to capitalize on the Limelight's fame. Mr. Chatwal's press release, dated October 19, 2015, acknowledged the Limelight marks' notoriety stating:

   Vikram Chatwal, the visionary hotelier who conceptualized the

   Dream Hotel, Night Hotel, Time Hotel and Unscripted Hotel brands,

COMPLAINT FOR LANHAM ACT VIOLATIONS, TRADEMARK INFRINGEMENT, AND UNFAIR COMPETITION
4483335v1/015318

announced today a partnership deal that will expand the Jue Lan Club,
the Chinese restaurant in NY **set to open in the former home of the
legendary Limelight nightclub**, into five markets domestically and
internationally.

The press release explicitly connected the Limelight nightclub with Gatien, stating:
"***The restaurant will also incorporate historical details from the legendary
Limelight, including a Gatien room, named after the former owner, Peter
Gatien***."[6]

56.    When the New York Times reviewed Jue Lan Club on January 20,
2016, the headline referenced the famous Limelight—"The Many Live of
Limelight"—and the article noted that "[t]he building was once home to the
notorious nightclub Limelight."

57.    In the New York Times article, Jue Lan Club's partner Stratis
Morfogen discussed embracing the Limelight past to enhance the business:  "The
history of New York City night life—it's pretty incredible what this building
represents. . . .  You had Andy Warhol hosting events here.  You had Keith Haring
painting the stairs.  You've got to embrace the art and history of this."  Mr.
Morfogen capitalized on the Limelight famous history by adding menu items like
"Club kid cocktail" and "decorative touches like emerald-green banquettes and, in a
dining room upstairs, wallpaper created from photos of the clubgoers who made the
Limelight famous."

58.    But Dream knew it could not freely trade on the Limelight marks and
Gatien's fame and notoriety—the Jue Lan Club proprietors contacted Gatien's
daughter Jen to obtain her permission to use Gatien's name for the Gatien Room in

---

[6]  Vikram Chatwal, Press Release:  *Jue Lan Club - Manhattan's Highly-Anticipated
Chinese Restaurant Concept - To Expand Into Five Markets Globally In
Partnership With World Renowned Hotelier* (Oct. 19, 2015), *available at*
http://www.prnewswire.com/news-releases/jue-lan-club---manhattans-highly-
anticipated-chinese-restaurant-concept---to-expand-into-five-markets-globally-in-
partnership-with-world-renowned-hotelier-vikram-chatwal-300162034.html    (last
visited August Aug. 24, 2016).

their new restaurant.  One of the partners in the Jue Lan Club venture wrote to Jen: "I don't even have a picture of me in the restaurant but I want your father in all his Glory!"  Jen requested that they make an offer of financial compensation for using the name.  The Je Lan Club did not use Gatien's name or the Limelight marks in commerce because the parties never reached an agreement on Gatien's compensation for any such use.

59.    Upon information and belief, Defendants will open the Limelight club in the Dream Hollywood hotel in approximately December 2016, and will announce and begin marketing its opening in approximately September 2016.

## <u>COUNT I</u>

## <u>FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)(1)(A)</u>

60.    Gatien repeats the allegations above as if fully set forth herein.

61.    Defendants' acts complained of herein violate Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).  Defendants' use of the Limelight marks violates Gatien's trademark rights and is likely to cause confusion, mistake, and/or deception as to the affiliation, connection, or association of the Defendants' Limelight club, their products, services, and commercial activities with Gatien, his products, services, and commercial activities.  Defendants' acts are further likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendants' products, services, and commercial activities.

62.    Gatien is and will continue to be injured by Defendants' violations of 15 U.S.C. § 1125(a)(1)(A) and has no adequate remedy at law.  Gatien is entitled to injunctive relief, Defendants' profits resulting from Defendants' violations, and recovery of Gatien's monetary damages and costs.

63.    Defendants' violations of 15 U.S.C. § 1125(a)(1)(A) are knowing, deliberate, intentional, and in bad faith.  Accordingly, Gatien is entitled to a recovery of enhanced damages and his attorney fees.

## COUNT II

## CANCELLATION OF TRADEMARKS UNDER 15 U.S.C. § 1119

64.    Gatien repeats the allegations above as if fully set forth herein.

65.    Based on the USPTO's May 31, 2016 notices of allowance and Defendants' imminent use of the Limelight marks in commerce, RMNJ's applications will likely register as U.S. Trademark Registrations.  In the event that the marks covered by RMNJ's applications will register, Gatien seeks a ruling under 15 U.S.C. § 1119 that such registration, and U.S. Trademark Serial Nos. 86,723,624 ("Limelight) and 86,723,630 ("The Limelight") issued erroneously and such registrations be cancelled in view of Gatien's prior rights.

66.    In view of the identity and similarity of the RMNJ's sought marks and Gatien's Limelight marks—as recognized by the USPTO when it initially refused the registration—and the identity and close relationship of Defendants' services with Gatien's, the RMNJ's sought marks as applied to Defendants' services so resemble Gatien's Limelight marks, as applied to his products and services, as to be likely to cause confusion or cause mistake or to deceive in violation of § 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), and Gatien is entitled to cancellation.

## COUNT III

## COMMON LAW TRADEMARK INFRINGEMENT

67.    Gatien repeats the allegations above as if fully set forth herein.

68.    Defendants' intentional and willful acts complained of herein, knowingly and willfully utilizing the Limelight marks constitutes trademark infringement in violation of the common law of California.

69.    Defendants' acts complained of herein are likely to cause confusion, mistake, and/or deception, including but not limited to confusion, mistake, and/or deception regarding the source, origin, and/or affiliation of products and services promoted or sold by Defendants.

70.     Defendants' acts complained of herein have been intentional, willful, and in bad faith.  Defendants have deliberately disregarded Gatien's rights and the Limelight marks in an attempt to misappropriate the reputation and goodwill in the Limelight marks and to deliberately cause confusion, mistake, and/or deception.

71.     Defendants' acts cause and will continue to cause Gatien to suffer damages in an amount to be proven at trial.  Defendants' violations causes and will continue to cause Gatien irreparable injury to his business reputation and goodwill. Gatien will be irreparably damaged unless and until this Court enjoins Defendants' violations.

## COUNT IV

## CALIFORNIA UNFAIR COMPETITION UNDER § 17200

72.     Gatien repeats the allegations above as if fully set forth herein.

73.     Defendants have engaged in unlawful, fraudulent or unfair business acts or practices, knowingly and willfully utilizing the Limelight marks.

74.     Through Defendants' acts complained of herein, Defendants have committed unfair competition in violation of California Business and Professions Code Section 17200 et seq. ("California Unfair Competition Law").  Through the acts complained of herein, Defendants have committed unlawful and unfair business acts and practices in violation of California Unfair Competition Law.

75.     Defendants' acts cause and will continue to cause Gatien to suffer damages in an amount to be proven at trial.  Defendants' violations cause and will continue to cause Gatien irreparable injury to its business reputation and goodwill. Gatien will be irreparably damaged unless and until this Court enjoins Defendants' violations.

76.     Pursuant to the California Unfair Competition Law, Gatien is entitled to appropriate injunctive relief and profits resulting from Defendants' violations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Gatien requests the Court to award the following relief:

a) Judgement on all counts against Defendants and in favor of Gatien;

b) To enter an order preliminarily and permanently enjoining Defendants, and their officers, agents, servants, and employees, and all persons in active concert or participation with any of them, from using the Limelight marks as described herein or any other name, mark, trade name, or any other designation of origin which is confusingly similar to the Limelight marks, alone or in combination with other words or designs;

c) To enter an order preliminarily enjoining Defendants, and their officers, agents, servants, and employees, and all persons in active concert or participation with any of them, from any conduct that is likely to cause confusion, mistake, deception, or misunderstanding as to the source, affiliation, connection, or association of Defendants with Gatien;

d) To enter an order cancelling Defendants' U.S. Trademark Serial Nos. 86,723,624 ("Limelight) and 86,723,630 ("The Limelight");

e) An award to Gatien in the amount of his monetary damages along with an award of enhanced or exemplary damages, and attorneys' fees due to Defendants' deliberate and willful conduct, and all costs and expenses incurred in this action;

f) An award to Gatien in the amount of Defendants' profits resulting from Defendants' violations as warranted under the Lanham Act or California Law;

g) To enter an order requiring Defendants to do all of the following:

(1) File with the California Secretary of State appropriate documentation changing any entity using the name Limelight to a name which does not include Limelight;

(2) File an express abandonment of any pending trademark application for the Limelight marks;

(3) Transfer of any domain names containing the Limelight marks from Defendants to Gatien;

h) All other relief, in law or in equity, as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Gatien respectfully requests a trial by jury of any and all issues on which a trial by jury is available under the applicable law.

Dated: September 1, 2016

WILLIAM CHRISTOPHER CARMODY
OLEG ELKHUNOVICH
SUSMAN GODFREY L.L.P.


By: */s/ Oleg Elkhunovich*
Oleg Elkhunovich
Attorneys for Plaintiff Peter Gatien

20